(790 P.2d 948)
No. 63,596

ALLEN REALTY, INC., *Appellant,* v. THE CITY OF LAWRENCE, KANSAS, A Municipal Corporation; GENE SHAUGHNESSY, Building Inspector for the City of Lawrence; and RAMON POWERS, State Historic Preservation Officer for the State of Kansas, *Appellees.*

Opinion filed April 20, 1990.

*Todd N. Thompson* and *Jane M. Eldredge,* of Barber, Emerson, Springer, Zinn & Murray, of Lawrence, for appellant.

*Roger K. Brown,* of Allen, Cooley & Allen, of Lawrence, for appellees City of Lawrence, Kansas, and Gene Shaughnessy.

*John W. Campbell,* deputy attorney general, and *Robert T. Stephan,* attorney general, for appellee Ramon Powers.

*Ronald Schneider,* of Lawrence, for *amicus curiae* Lawrence Preservation Alliance, Inc.

Before BRAZIL, P.J., M. KAY ROYSE, District Judge, assigned, and JAMES J. NOONE, District Judge Retired, assigned.

NOONE, J.: Allen Realty, Inc., appeals from an order by the district court granting summary judgment to the City of Lawrence and dismissing plaintiff's appeal from a determination by Ramon Powers, the State Historic Preservation Officer for the State of Kansas (SHPO), recommending denial of a demolition permit.

Plaintiff has owned a lot at 1040 New Hampshire Street in Lawrence since 1976. Situated on the lot is an old building known as the English Lutheran Church (the Building). New Hampshire Street runs north/south and dead-ends into Eleventh Street, which runs east/west. Massachusetts Street runs north/south parallel to and one block west of New Hampshire Street. The Douglas County Courthouse (Courthouse), which is listed on the National Register of Historic Places, is situated south of Eleventh Street and fronts on the 1100 block of Massachusetts Street.

For about eight years prior to March 1988, the Building had been leased to the Lawrence Baptist Temple but was vacated during March 1988 because of its deteriorated and unsafe condition. An inspection of the Building by the Lawrence Fire Department, also during March 1988, found numerous violations of the Lawrence fire code and instructed plaintiff to correct such

*violations. Plaintiff* employed an architect and obtained *estimates of the cost of necessary repairs and/or renovation of the Building.* Subsequently, plaintiff applied to the City for a permit to demolish the Building.

` Because of the Building's proximity to the Courthouse, a registered historic site, the SHPO was notified of plaintiff's application for a demolition permit.

Initially, the SHPO determined that the proposed demolition would not affect any registered historic property. The SHPO withdrew that determination by letter of June 1, 1988. On June 29, 1988, the SHPO recommended by letter that the City deny the demolition permit because it "will encroach upon, damage or destroy *a historic building in the environs* of the Douglas County Courthouse, a property listed on the National Register of Historic Places." (Emphasis added.)

Plaintiff, by letter of July 6, 1988, requested the City to issue the demolition permit, alleging in effect that the SHPO's determination of June 29, 1988, referred to the Building, which was not a registered historic building. Thereafter on July 13, 1988, the SHPO wrote the City a third letter, stating that the demolition "would encroach upon, damage or destroy *the environs of the Douglas County Courthouse*" (emphasis added), and again recommended that the demolition permit be denied.

Once that determination was made by the SHPO, the City could not issue a demolition permit until the governing body of the City determined, after considering all relevant factors, "that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to such historic property resulting from such use." K.S.A. 75-2724(a).

The City put the matter on its commission agenda for July 19, 1988, and invited plaintiff to appear and show cause why the demolition permit should not be denied. Following such hearing, the permit was denied. Plaintiff appealed the SHPO's determination pursuant to K.S.A. 77-601 *et seq.* and the City's denial of the demolition permit pursuant to K.S.A. 75-2724(b) and K.S.A. 1989 Supp. 60-2101(d) to the district court. The district court dismissed plaintiff's appeal from the SHPO's determination and

granted summary judgment to the City on plaintiff's appeal from the City's denial of the permit.

Plaintiff's instant appeal emanates from the implementation of the provisions of the Kansas Historic Preservation Act. K.S.A. 75-2715 *et seq.* K.S.A. 75-2715 reads:

"The legislature hereby finds that the historical, architectural, archeological and cultural heritage of Kansas is an important asset of the state and that its preservation and maintenance should be among the highest priorities of government. It is therefore declared to be the public policy and in the public interest of the state to engage in a comprehensive program of historic preservation and to foster and promote the conservation and use of historic property for the education, inspiration, pleasure and enrichment of the citizens of Kansas."

Since 1977, Kansas law has placed the burden on the state and its political subdivisions to provide notice of projects which might have an adverse impact upon historic properties. K.S.A. 75-2724 provides the procedure for determining whether a proposed project threatens a historic property. In pertinent part, K.S.A. 75-2724(a) provides:

"The state or any political subdivision of the state, or any instrumentality thereof, shall not undertake any project which will encroach upon, damage or destroy any historic property included in the national register of historic places or the state register of historic places or the environs of such property until the state historic preservation officer has been given notice, as provided herein, and an opportunity to investigate and comment upon the proposed project. Notice to the state historic preservation officer shall be given by the state or any political subdivision of the state when the proposed project, or any portion thereof, is located within 500 feet of the boundaries of a historic property located within the corporate limits of a city, or within 1,000 feet of the boundaries of a historic property located in the unincorporated portion of a county."

The proposed demolition of the Building clearly qualifies as a "project" as that term is defined in K.S.A. 75-2716(c): " 'Project' includes: . . . (3) activities involving the issuance of a lease, permit, license, certificate or other entitlement for use, to any person by the state or any political subdivision of the state, or any instrumentality thereof."

If the SHPO determines that a project would encroach upon, damage, or destroy a historic property or its environs, the project is halted and can only proceed if the governing body makes certain determinations. K.S.A. 75-2724(a) continues in part:

"If the state historic preservation officer determines, with or without having been given notice of the proposed project, that such proposed project will encroach upon, damage or destroy any historic property included in the national register of historic places or the state register of historic places or the environs of such property, such project shall not proceed until: (a) The governor, in the case of a project of the state or an instrumentality thereof, or the governing body of the political subdivision, in the case of a project of a political subdivision or an instrumentality thereof, has made a determination, based on a consideration of all relevant factors, that. there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to such historic property resulting from such use and (b) five days' notice of such determination has been given, by certified mail, to the state historic preservation officer."

In this case, the SHPO made a determination that the project (demolition of the Building) would encroach upon, damage, or destroy the environs of the Douglas County Courthouse (historic place). The governing body of the City failed to find that there was no feasible and prudent alternative to demolition and denied plaintiff's application for a permit.

Plaintiff raises several issues on appeal. Among such issues are a claim that plaintiff was denied due process and that K.S.A. 75-2724 is unconstitutional. We shall consider these together.

In support of such claim, plaintiff points out that K.S.A. 75-2724(a) authorizes the SHPO to investigate and make a determination, in whatever manner he/she might see fit, that a project would damage a historic property. No input is required from any specific party, including the landowner. No hearing of any type is required, and there is no time limit by which the SHPO must conclude an investigation and make a determination. Plaintiff contends that this determination affects a landowner's property rights because, if the SHPO determines that a project will damage a historic property, the project must come to a halt pending a further determination by the governing body. In the case at bar, plaintiff alleges that he sought, but was denied, a predetermination hearing by the SHPO.

In addition, plaintiff argues that K.S.A. 75-2724 contains no provision for notice to a landowner proponent of a project of any scheduled or proposed hearing by the governing body to determine whether there are feasible and prudent alternatives to the project when the SHPO has determined that such project will

damage a historic property. Plaintiff also asserts that K.S.A. 75-2724 provides no procedure that the governing body must follow other than a consideration "of all relevant factors." In the instant case, plaintiff acknowledges that he did receive a five-day notice inviting him to appear and "show cause" why the City should determine that there was no feasible and prudent alternative to demolition and that all possible planning had been done to minimize harm to the Courthouse.

Considering these arguments in reverse order, we conclude that there is no merit to plaintiff's argument that the lack of a notice provision to a private landowner in K.S.A. 75-2724 regarding a hearing by the governing body to consider the existence of feasible and prudent alternatives to a project offends due process. It is plaintiff's own argument that such a notice provision was not necessary when this statute was originally drafted because initially it applied only to government projects and the proponent would ultimately make the determination. It is also true that a private landowner, who has applied for a demolition permit from a governing body, has the right to the notices and hearings provided for by the appropriate laws governing such process. The determination by the SHPO restricted the authority of the City to issue a demolition permit but did not in any way affect the notice provision of the City's ordinance regarding applications for demolition permits. The same may be said regarding plaintiff's further argument that K.S.A. 75-2724 provides no procedure for a governing body to follow at a hearing to determine whether feasible and prudent alternatives exist. It simply mandates *what the governing body must consider* before taking action (in this case on an application for a demolition permit) when the SHPO has determined that the project will adversely affect a historic property. K.S.A. 75-2724 does not purport to amend or replace the notice and hearing provision of the City's municipal code.

A different question is posed by plaintiff's argument concerning the provision of K.S.A. 75-2724(a) regarding the authority of the SHPO. There is little question but that the language of the statute in that respect is quite sweeping:

"Notwithstanding the notice herein required, nothing in this section shall be interpreted as limiting the authority of the state historic preservation officer to investigate, comment and make the determinations otherwise per-

mitted by this section regardless of the proximity of any proposed project to the boundaries of a historic property. The state historic preservation officer may solicit the advice and recommendations of the historic sites board of review with respect to such project and may direct that a public hearing or hearings be held thereon."

As plaintiff has pointed out, the SHPO is permitted to make a determination publicly or privately at the SHPO's discretion and is not required to seek input from any interested party or entity. In view of the fact that an adverse determination has the effect of stopping a project until the governing body finds that no feasible and prudent alternative exists, plaintiff asserts that bestowing such unfettered authority on the SHPO denies due process to a landowner.

It is well established that the constitutionality of a statute is presumed and " 'that all doubts must be resolved in favor of its validity . . . and if there is any reasonable way to construe the statute as constitutionally valid, that should be done.' " *Rogers v. Shanahan*, 221 Kan. 221, 223, 565 P.2d 1384 (1976). In summarizing guidelines involved in determining the constitutionality of statutes in *City of Baxter Springs v. Bryant*, 226 Kan. 383, 386, 598 P.2d 1051 (1979), the court held: " 'Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt.' "

The requirements of due process do not apply unless plaintiff first establishes that a constitutionally protected interest (in this case a property interest) is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); *Gunkel v. City of Emporia*, 835 F.2d 1302, 1305 (10th Cir. 1987).

Property interests are not inherent and are not created by the Constitution. In *Gunkel*, the Tenth Circuit Court of Appeals stated:

"As the Supreme Court has noted, property interests are not created by the Constitution. 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). And, although 'mutually explicit understandings' can be sufficient to create such property rights, *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699-700, 33 L. Ed. 2d 570 (1972), 'the sufficiency of the claim of entitlement must be decided by reference to state law.' *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074,

2077, 48 L. Ed. 2d 684 (1976); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 1155, 71 L. Ed. 2d 265 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law.')." 835 F.2d at 1304.

Kansas law does not grant property owners a constitutionally protected property interest in permits. *Restaurants of Wichita, Inc. v. City of Wichita*, 215 Kan. 636, Syl. ¶ 4, 527 P.2d 969 (1974). In this case and in *Gunkel*, the courts found no vested property rights in permits that had been issued to property owners as against the power of the state or municipality to revoke such permits for cause. Here, plaintiff claims a protected property right in a demolition permit that has never been issued but for which plaintiff has made application. We find no basis in state law or other source for such a claim. Since plaintiff had no protected property interest in a demolition permit, he has no claim to procedural safeguards.

Plaintiff also seeks the invalidation of K.S.A. 75-2724 on the grounds that it provides for what amounts to an unlawful taking of his real property. Plaintiff alleges that the actions of the SHPO and the City have resulted in preventing any economically viable or prudent use of his property. This, he argues, is tantamount to a taking for public use without condemnation proceedings. Plaintiff cites *Hodel v. Virginia Surface Mining & Recl. Assn.*, 452 U.S. 264, 296, 69 L. Ed. 2d 1, 101 S. Ct. 2352 (1981), and *Lafayette Park Baptist Church v. Scott*, 553 S.W. 2d 856, 862 (Mo. App. 1977).

We acknowledge that the cases cited by plaintiff essentially hold that statutory regulation or restriction to a degree that prevents a landowner from making economically viable or prudent use of property can effect a taking of the property. We do not agree that this is relevant to this case. The actions of the SHPO did not constitute a taking of any property interest of plaintiff and did not impose any permanent restriction on plaintiff's use of his property. At most, the SHPO's recommendation had the effect of a "status quo" type order pending a hearing by the City Commission. The language of K.S.A. 75-2724 indicates that the legislature took pains to preclude a taking of property by its implementation. The restriction of the statute is by its own terms

effective only *until* a landowner can demonstrate that there is no feasible and prudent alternative to the restrained use.

A taking cannot be established by showing that a historic preservation statute prevents a landowner from making a particular use of property that would be more beneficial or profitable than its current use. A leading case in that regard is *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646, *reh. denied* 439 U.S. 883 (1978), in which the owner of a landmark railroad terminal was prohibited from building an office building on top of the terminal. The Supreme Court found that "the submission that appellants may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable." 438 U.S. at 130.

We conclude that the implementation of K.S.A. 75-2724 by the defendants did not result in a taking of plaintiff's real property, and the district court did not err when it found 75-2724 to be constitutional.

Plaintiff next contends that the actions of both the SHPO and the City were unreasonable, arbitrary, and capricious and unsupported by substantial evidence. Since this issue was raised separately in the two appeals which were filed pursuant to different statutes, we shall consider them separately.

Plaintiff's appeal from the SHPO's determination was properly perfected pursuant to K.S.A. 77-601 *et seq.*, an act for judicial review of an agency action. The State Historical Society is designated as an agency by K.S.A. 75-2717(a). The SHPO's determination and recommendation to the City was an agency action as defined by K.S.A. 77-602(b):

" 'Agency action' means:

(1) The whole or a part of a rule and regulation or an order;

(2) the failure to issue a rule and regulation or an order; or

(3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise."

The district court granted summary judgment and dismissed plaintiff's appeal from the agency action. Our standard of review is whether reasonable minds could differ as to the conclusion

drawn from the evidence. *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306, 756 P.2d 416 (1988).

Plaintiff essentially argues that the SHPO erroneously interpreted the term "environs" by considering plaintiff's Building to be part of the environs of the Courthouse, and that the SHPO further believed that the Building was protected by virtue of being a historic building itself, even though it was not registered. We find no merit in either of these arguments.

The term "environs" is not defined in the Kansas statutes. The fact that the legislature required that notice be given to the SHPO of projects within 500 or 1,000 feet of a historic structure or site but still authorized the SHPO to investigate and make a determination on projects beyond 500 or 1,000 feet would be rendered meaningless if the legislature intended to protect only property immediately adjacent to a registered property. If such was the intent of the legislature, as plaintiff appears to argue, it would have used a more restrictive term, such as "adjacent" rather than the broad term "environs."

Plaintiff accurately points out that the SHPO considered plaintiff's property to be a historic building "in and of itself," as stated in the letter of June 29, 1988, to the City. Plaintiff then contends that, because the SHPO thought plaintiff's Building had historic significance of its own, the SHPO made his determination and recommendation to the City in an effort to protect the Building instead of the Courthouse.

This allegation alone is not sufficient to show that the SHPO acted arbitrarily, capriciously, or unreasonably. The same letter clearly makes the required finding that the demolition of the Building would impact upon the environs of the Courthouse.

"The (Old) English Lutheran Church represents an early example of John Haskell's work, while the nearby Douglas County Courthouse represents one of Haskell's last efforts. In a very real sense the old church juxtaposes against the later Haskell· work. Both buildings are constructed of native limestone, and both buildings clearly project separate and shared historic images of the downtown Lawrence community. Within five hundred feet of the courthouse stand other buildings slated for demolition; those other buildings lack the historical associations and architectural integrity of the English Lutheran Church."

It is precisely because the Building has a historic value of its own that its demolition would impact negatively upon the nearby

Courthouse. The SHPO's actions were not arbitrary, capricious, or unreasonable and were supported by substantial evidence.

Plaintiff also contends that the SHPO was arbitrary and capricious because he rescinded the original finding that the permit would not damage the Courthouse and failed to conduct a public hearing. Plaintiff's position with regard to rescinding the original order is little more than another argument that the SHPO misconstrued the terms "environs," which we have heretofore concluded lacked merit. We have heretofore also noted that K.S.A. 75-2724 provides that the SHPO "*may* direct that a public hearing or hearings be held" but does not require a public hearing. While it might well have been a better practice for the SHPO to have conducted a public hearing as he was authorized to do, it was clearly within his discretion to refuse to do so. We conclude that the district court did not err in dismissing plaintiff's appeal from the agency action.

Plaintiff contends that the City acted arbitrarily and capriciously in several respects, including placing the burden on plaintiff to prove that no feasible and prudent alternative to demolition existed. We find no fault with that determination. Clearly the burden of proof must rest on the plaintiff, who was the proponent of and the only party who would be served by such a finding.

Plaintiff further argues that the City acted arbitrarily and capriciously in that the commission members were confused as to their statutory duties. Plaintiff contends the City considered such irrelevant matters as other property allegedly, but not in fact, owned by plaintiff and whether plaintiff had tried to or could sell the subject property. In particular, plaintiff contends the City demanded detailed plans that did not exist regarding future use of the land after the proposed demolition.

Plaintiff asserts that he introduced facts, including the findings of an architectural firm, that proved demolition and removal of the Building from the land was the only feasible and prudent alternative. These facts included the magnitude of repairs required to make the Building safe and habitable, the amount of taxes and insurance, and the prohibitive cost of renovating or remodeling the Building from a church to possible use as an office building. Plaintiff also pointed out that zoning requirements for

off-street parking could not be met on the lot with the existing structure.

No other evidence was offered, as such, but several members of the public made various suggestions or queries as to whether the Building could be sold or used as a church or a tourist information center or for housing or governmental offices. Plaintiff's attorney denied that plaintiff had received a bona fide offer to purchase the property. Plaintiff argues that commission members declared that they needed to know details, including plans and specifications, of what future use he would make of the land after demolition and offered to continue the meeting so that he could produce such information. Plaintiff claims that he had no such plans, and could not produce them, and asked for a decision on the demolition permit application. Some members of the commission commented upon and made inquiry concerning other parcels of property plaintiff owned that might be utilized in future plans of plaintiff. Plaintiff denied ownership of some parcels and argued that other properties had no relevance to the demolition of the Building. After plaintiff insisted that a decision on the permit was the only issue to be decided, the commission members voted to deny the permit.

The district court acknowledged that plaintiff had demonstrated that repair and maintenance of the existing Building would be costly and "with virtually no benefit," and that renovation and conversion to office space would be "an especially futile option." The court then noted that these were the only two alternatives that plaintiff addressed, that many alternatives were suggested by members of the public and commission members, but that plaintiff dispelled none of those alternatives. The district court specifically found that plaintiff failed to show any effort to sell the property or to obtain additional renovation cost estimates from other architectural firms.

The district court concluded that plaintiff had the burden of proving no viable alternative to demolition. We agree. The district court further concluded, however, that the burden shifted to the opponent to suggest possible, reasonable alternatives, and then returned to the plaintiff to dispel them as imprudent or infeasible. We disagree.

Such a formula might well be appropriate in a structured judicial forum, where the parties are known and the issues defined beforehand, but such was not the case here. This was not an adversarial judicial proceeding with an identified opponent. It was a city commission meeting where members of the public may appear and participate. At least eight people made suggestions or queries about various alternatives. Members of the commission did also. Pursuant to the district court's formula, the burden shifted back to plaintiff to dispel all of the suggested alternatives as imprudent or infeasible.

We hold that the language of K.S.A. 75-2724(a), directing the governing body to consider all relevant factors in its determination of whether there is a feasible and prudent alternative to a proposed project, was included to prevent a possible hardship or injustice. That provision authorizes the governing body to lift the restraint imposed by 75-2724 when appropriate. We further hold that the words "relevant factors" as used in K.S.A. 75-2724 mean something more than mere suggestions as to possible alternatives. A proposed alternative would be a relevant factor if it included sufficient factual information to support a conclusion that such alternative was feasible and prudent. A proposed alternative unsupported by such factual information could not form the premise of such a conclusion and would not be relevant. It was clearly arbitrary and unreasonable for the City to require plaintiff to dispel suggestions offered without evidence both by it and various members of the public in attendance. It was also error for the district court to grant summary judgment based in part upon a conclusion that plaintiff had failed to do so.

Equally important, the district court held that K.S.A. 75-2724 directed the City to find that, if the permit was issued, the program would be undertaken in such a manner as to limit harm to the Courthouse. We concur. However, the court also held that this required plaintiff to furnish the City with the information it requested as to future use of the land, including plans and specifications, type of use, etc. Plaintiff's failure to do so, the district court held, left the City with no alternative but to deny the permit. We disagree.

K.S.A. 75-2724(a) directs the governing body to find that the "program includes all possible planning to minimize harm to such

historic property resulting from such use." The "program" in this instance was *demolition of the existing building.* The program would result in an unimproved lot. In response to questions concerning future use, plaintiff advised the City he had no present plan other than to remove an old, deteriorated, and unsafe structure that was a financial burden and liability hazard. The Building was not habitable, and plaintiff had been warned that he faced legal action because the Building was in violation of the fire code. Any future use of the remaining lot would require the appropriate permits from the City. Any future proposal would also trigger the provisions of the Historic Preservation Act, and the SHPO would again have the opportunity to determine what impact such proposal would have on the historic Courthouse. The action of the City requiring plaintiff to provide specific plans for future use of the remaining lot after demolition as a precondition for issuing the demolition permit was arbitrary, capricious, and unreasonable, and not relevant to the provisions of K.S.A. 75-2724.

Finally, we note that both the City and the district court concluded that plaintiff had an obligation to attempt to sell the property as an alternative. A genuine offer to purchase and preserve the property, particularly by a governmental entity or a historic preservation organization, could indeed be a relevant factor for consideration, depending on terms of the offer and all other circumstances. A sale for any purpose other than preservation would simply transfer the matter to a different plaintiff. We conclude that K.S.A. 75-2724(a) does not require a landowner to attempt to sell his property and dispel sale as an alternative before seeking relief from the governing body nor does it require him to make a forced sale.

Plaintiff also alleges that the district court erred when it denied a writ of mandamus directing the City building inspector to issue the demolition permit. We find no merit to this contention.

The judgment of the district court denying plaintiff relief and dismissing his appeal from the agency action is affirmed. The order of the district court entering summary judgment for the City is reversed and the case is remanded to the district court with directions to remand to the City for a new hearing on plaintiff's application for a demolition permit.