(819 P.2d 138)

No. 65,622
No. 65,623

Lawrence Preservation Alliance, Inc., and Kansas State Historical Society, *Appellees,* v. Allen Realty, Inc.; The City of Lawrence, Kansas, A Municipal Corporation; and Gene Shaughnessy, Building Inspector for the City of Lawrence, Kansas, *Appellants.*

Opinion filed October 11, 1991.

*Todd N. Thompson*, of Barber, Emerson, Springer, Zinn & Murray, of Lawrence, for appellant Allen Realty, Inc.

*Roger K. Brown*, of Allen, Cooley & Allen, of Lawrence, for appellants City of Lawrence and Gene Shaughnessy.

*Ronald Schneider*, of Lawrence, for appellee Lawrence Preservation Alliance, Inc.

*Theresa M. Nuckolls*, assistant attorney general, *John W. Campbell*, deputy attorney general, and *Robert T. Stephan*, attorney general, for appellee Kansas State Historical Society.

Before GERNON, P.J., LEWIS, J., and RON ROGG, District Judge, assigned.

GERNON, J.: This case is on appeal for the second time. This court, in *Allen Realty, Inc. v. City of Lawrence*, 14 Kan. App. 2d 361, 790 P.2d 948 (1990) (*Allen I*), reversed and remanded with instructions for the City of Lawrence (City) to hold a hearing on a demolition permit application.

*Allen I* dealt with the application of Allen Realty, Inc., (Allen) to the City for a demolition permit for a structure owned by Allen known as the English Lutheran Church (Building) at 1040 New Hampshire Street in Lawrence. The Douglas County Courthouse (Courthouse), which is listed on the National Register of Historic Places, is situated south of Eleventh Street and fronts on the 1100 block of Massachusetts Street. Massachusetts Street in Lawrence runs one block west of New Hampshire Street.

The Building is near the Courthouse and, therefore, the State Historical Preservation Officer (SHPO) was notified of Allen's application for a demolition permit. Such a notice is required by K.S.A. 75-2724. Also, the City of Lawrence is a party to a Cer-

tified Local Government Agreement, dated July 11, 1989, under which the City agrees, among other matters, to "maintain a qualified historic preservation commission" and to provide for "adequate public participation in the local historic preservation program." The City's Historic Preservation Ordinance specifically authorizes the Lawrence Historic Resources Commission (HRC) to testify before the City Commission on any matter affecting historically or architecturally significant properties. The ordinance requires notice to the HRC within five days after receipt of an application for a demolition permit.

The SHPO initially concluded that the demolition would not affect any historical property, but withdrew that determination and later recommended by letter that the City deny the demolition permit because the demolition "will encroach upon, damage or destroy a historic building in the environs of the Douglas County Courthouse, a property listed on the National Register of Historic Places." The SHPO later wrote a third letter to the City, stating that the demolition "would encroach upon, damage or destroy the environs of the Douglas County Courthouse" and repeated the recommendation that the demolition permit be denied. 14 Kan. App. 2d at 363.

The City subsequently denied the application for the permit. Allen appealed to the district court, which dismissed its appeal from the SHPO's determination and granted summary judgment to the City on Allen's appeal from the City's denial of the permit. 14 Kan. App. 2d at 363-64. Allen appealed to the Court of Appeals, which reversed the district court's grant of summary judgment to the City and remanded the case to the City for a new hearing on Allen's application for a demolition permit. 14 Kan. App. 2d at 374. The pertinent rulings of *Allen I* were: (1) The proponent of a project has the burden to prove no acceptable alternative exists; (2) a potential alternative is not a "relevant factor" unless it is supported by evidence to indicate it is both feasible and prudent; and (3) the proponent does not have to refute a potential alternative unless it is proven to be a "relevant factor." 14 Kan. App. 2d at 372-74.

This court further held that the City may not require a landowner to provide specific plans for the future use of property after demolition as a precondition for issuing a demolition permit,

nor does Kansas law require a landowner to attempt to sell his property and dispel sale as an alternative to demolition before issuing a demolition permit. 14 Kan. App. 2d at 373-74.

Allen, the City, and the SHPO were parties in *Allen I*. The Lawrence Preservation Alliance, Inc., (LPA) was permitted to file an *amicus curiae* brief in *Allen I*.

Immediately after receipt of this court's opinion in *Allen I*, Allen's counsel sent a letter to the City, addressed to Mr. Roger Brown as counsel for the City, which stated in part:

"Allen Realty does not desire any further undue delay, and thus it does not plan to seek review of the decision of the Court of Appeals by the Kansas Supreme Court.

"It is Allen Realty's intention to proceed as soon as is reasonably possible with a hearing before the City Commission. However, since it has only been a little over one week since the Court of Appeals issued its decision, Allen Realty has not yet had sufficient opportunity to prepare for such a hearing, and thus it is not in a position to specify the date when it desires that the hearing be placed on the agenda."

On May 14, 1990, Allen sent a letter to the Lawrence city manager, Mike Wildgen, to "request a hearing before the City Commission on its meeting of May 22, 1990, to discuss our demolition permit request."

Wildgen sent a letter to Allen two days later, which stated:

"I presented your request of May 14, 1990, to the City Commission. The Commission felt that the next two City Commission agendas will not allow for the placement of this item on either of those agendas. They did schedule your request to discuss the demolition permit for June 12, 1990."

The agenda for the City Commission meeting, including the demolition permit request, was published in the Lawrence Journal World on June 8, 1990, four days before the "discussion" was scheduled. There was no other notice of or communication concerning the demolition item being on the City Commission agenda to either LPA or the SHPO.

On June 6, 1990, Dave Billings, president of LPA, sent a letter to Wildgen, which stated in part:

"As you are aware, we have been following the progress of the attempt by Allen Realty to obtain a demolition permit for the property. . . .

"One alternative would be for the LPA to purchase the building, remodel it, then either lease or sell it to a party who will maintain the property. . . .

"We have determined that it is structurally feasible to rehabilitate the building. Now we must determine if it is *economically* feasible to rehabilitate it. In order to do this we must have access to the building to allow professional persons such as architects and engineers to examine the building. If we could determine a day, with reasonable notice, when this could be done, the building would only need to be accessible for that one day.

"Our request is that the City Commission defer granting a demolition permit for a period of 60 days. This would allow time for us to make a final determination on the economic feasibility of preserving the property."

On the same day, Billings sent a letter to Allen, which included a copy of the letter from LPA to Wildgen. The letter to Allen stated in part: "Please note that we would like the opportunity to access the building to determine the economical feasibility of preserving it. We would be most appreciative of your cooperation on this matter." No access was permitted.

The request for the demolition permit was considered at the City Commission meeting on June 12, 1990. One of the commissioners noted that Allen had not submitted any information to the Commission prior to the hearing and stated that the Commission did not have the expertise to review the documentation presented at the meeting and make a decision. The record of the City Commission meeting of June 12, 1990, reveals no participation by the Historic Resources Commission, but does show repeated attempts to refer the matter to the HRC, which were rejected by a majority of the City Commission.

After a general discussion concerning communications regarding the Building and the fact that LPA had requested a 60-day delay, Arley Allen, representing Allen Realty, Inc., was allowed to present information supporting his request for the permit. Allen mentioned a fire department inspection which took place in 1988, summarized three different evaluations of the Building which he had authorized and contracted for, and presented written copies of the three reports to the Commission. In addition, he presented a series of photographs of the property and the Building. None of the evaluations had been provided to the SHPO or the LPA, or to the City, prior to the meeting.

Highly summarized, the three evaluations by the architectural and engineering firms which had inspected the Building concluded that the Building was in gross disrepair and estimated that the cost of renovation could be as high as $286,000.

Billings, representing LPA, requested that the Commission not make a decision at that meeting and asked that the Historic Resources Commission be allowed to look at the property and make a recommendation to the Commission. He further requested a 60-day delay in order that LPA be allowed time to review any information received.

By a 3-2 vote, the Commission approved the following motion:

"to find there is no feasible and prudent alternatives to demolition and the manner in which the demolition is to be done includes all possible planning to minimize harm to the Douglas County Courthouse, and to include by reference the reports from Gould-Evans; Latimer, Summer and Associates; and Finney and Turnipseed."

On June 19, 1990, the LPA filed a petition in the district court seeking review of the City's determination. The Kansas State Historical Society (KSHS) filed a separate petition seeking review of the City's action. The KSHS petition sought a restraining order to prevent issuance of a demolition permit. KSHS also moved to consolidate its action with the one filed by LPA.

The trial court granted a temporary restraining order on June 29, 1990. The trial court subsequently issued a memorandum decision which set aside the City Commission's determination and remanded the matter for "a full public hearing." The court noted that the City failed to give the KSHS copies of the correspondence or adequate notice of the hearing. The court found that the City acted arbitrarily and capriciously in failing to live up to its certified local government agreement with the SHPO to participate in the National Historic Preservation Program and in ignoring the request of the LPA for additional time and access to the facility.

Both Allen and the City appeal the district court's decision.

## HISTORIC PRESERVATION OVERVIEW

The regulation of private property by federal and state preservation programs has been approved by the courts as a valid exercise of the government's police power. See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 125, 57 L. Ed. 2d 631, 98 S. Ct. 2646, *reh. denied* 439 U.S. 883 (1978).

Usually a site, either an individual structure or an entire district, is designated as historically or culturally significant and,

thereafter, certain restrictions are placed on the property to preserve it. Under some of the federal preservation laws, a landowner in a proposed historical district may have the option of being included within the district. If the landowner chooses not to be a part of the district, the owner will not be entitled to any of the tax incentives or other benefits which may accrue to those within the district.

In the case before us, the restriction on the use of private property within the "environs" of an individual historic site, without the designation of a historic district, is at issue. Under what conditions and after what process may a landowner demolish a structure which is near a structure on the historical register? What procedures must the decision-making body use before a landowner may demolish or otherwise use the property? Who has standing to require notice, be heard, and appeal?

The statutory basis for the protection of certain property emanates from the Kansas Historical Preservation Act, K.S.A. 75-2715 *et seq.* K.S.A. 75-2715 states:

"The legislature hereby finds that the historical, architectural, archeological and cultural heritage of Kansas is an important asset of the state and that its preservation and maintenance should be among the highest priorities of government. It is therefore declared to be the public policy and in the public interest of the state to engage in a comprehensive program of historic preservation and to foster and promote the conservation and use of historic property for the education, inspiration, pleasure and enrichment of the citizens of Kansas."

K.S.A. 75-2724 provides the procedure for determining whether a proposed project by a government entity threatens a historical property and defines the notice to be given. K.S.A. 75-2724(a) states:

"If the state historic preservation officer determines, with or without having been given notice of the proposed project, that such proposed project will encroach upon, damage or destroy any historic property included in the national register of historic places or the state register of historic places or the environs of such property, such project shall not proceed until: (a) The governor, in the case of a project of the state or an instrumentality thereof, or *the governing body of the political subdivision, in the case of a project of a political subdivision or an instrumentality thereof, has made a determination, based on a consideration of all relevant factors, that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to such historic property*

*resulting from such use* and (b) five days' notice of such determination has been given, by certified mail, to the state historic preservation officer." (Emphasis added).

Since "project" is defined to include the issuance of a permit to any person by a city, K.S.A. 75-2716(c)(3), the provisions of 75-2724(a) are applicable to the situation here.

K.S.A. 75-2724(b) states in part: "Any person aggrieved by the determination of a governing body pursuant to this section may seek review of such determination in accordance with K.S.A. 60-2101 and amendments thereto."

*Allen I* is the only published opinion to consider the substantive provisions of K.S.A. 75-2724. The statute is mentioned but not analyzed in our decision in *Linsea v. Board of Chase County Comm'rs*, 12 Kan. App. 2d 657, 658, 753 P.2d 1292, *rev. denied* 243 Kan. 779 (1988), which discussed whether Linsea had standing to pursue an action as an individual after the County Commission had complied with the statute requiring review by the SHPO.

The trial judge's task, which has now become ours, was to examine the language of K.S.A. 75-2724 and related statutes and offer his judgment as to the meaning and intent of phrases such as "consideration of all relevant factors," "feasible and prudent alternatives," and "includes all possible planning to minimize harm," as they relate to the facts here. Given the limited number of Kansas cases, we must look elsewhere for guidance.

## FEDERAL LAW

KSHS notes that a federal statute governing Department of Transportation projects contains provisions which are nearly identical to the crucial portions of K.S.A. 75-2724(a). The federal law provides:

"(a) It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, *and historic sites*.

"(b) The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by transportation activities or facilities.

"(c) The Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23)

requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuse, or site) only if—

"(1) *there is no prudent and feasible alternative to using that land; and*

"(2) *the program or project includes all possible planning to minimize harm* to the park, recreation. area, wildlife and waterfowl refuge, or historic site resulting from the use." 49 U.S.C. § 303 (1988). (Emphasis added).

An important distinction between the federal act and the Kansas version is that, under the federal act, the administrative officer is empowered, indeed required, to conduct an independent investigation, with experts available to the officer, and to report findings and conclusions. The Kansas Legislature did not provide such assistance and procedure in the Kansas act. Such a requirement might serve the important function of providing an evaluation from an expert hired by neither side. The animus found in this case stems in part from the lack of trust and credibility each side has for the other, including the evaluations from experts. An independent set of experts, hired by neither side, might reduce the level of distrust and speed the decision-making process, as well as avoid the time and expense of lawsuits and appeals.

The federal statute was in existence for more than a decade prior to the enactment of K.S.A. 75-2724. While it is not binding, case law interpreting this federal statute is helpful in resolving the present dispute.

In *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 406, 28 L. Ed. 2d 136, 91 S. Ct. 814 (1971), the United States Supreme Court reviewed a decision by a federal district judge granting summary judgment to the Secretary of the Department of Transportation. In that case, summary judgment was granted based upon affidavits submitted by the parties and without an examination of the administrative record. 401 U.S. at 409. The Court reversed the decision to grant summary judgment and remanded the case "for plenary review of the Secretary's decision. That review is to be based on the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420. The Supreme Court also commented:

"But the very existence of the statutes indicates that protection of parkland was to be given paramount importance. The few green havens that are public parks were not to be lost unless there were truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes. If the statutes are to have any meaning, the Secretary cannot approve the destruction of parkland unless he finds that alternative routes present unique problems.

. . . .

". . . Certainly, the Secretary's decision is entitled to a presumption of regularity. [Citations omitted.] But that presumption is not to shield his action from a thorough, probing, in-depth review." 401 U.S. at 412-15.

In *Hickory Neighborhood Defense League v. Burnley*, 703 F. Supp. 1208, 1219 (W.D.N.C. 1988), *modified on other grounds* 893 F.2d 58 (4th Cir. 1990), the United States District Court concluded:

"The ultimate question for the Court is whether the agency took a hard look at all relevant factors, and used plain common sense in its determination as to whether the facts before the Secretary support his decision that there is no prudent and feasible alternative to the taking of some 4(f) property in this case for the project."

See *Coalition for Responsible Reg. Dev. v. Coleman*, 555 F.2d 398, 400 (4th Cir. 1977).

In *Coalition on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 66 (D.C. Cir. 1987), the court characterized the appropriate inquiry as being whether the Secretary gave consideration to the "relevant factors."

## WAS THE CITY'S ACTION ARBITRARY AND CAPRICIOUS?

The standard of review for appeals from administrative action is well-settled:

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

" 'In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' "
*Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ ¶ 1 and 2, 436 P.2d 828 [1968]).

See *D S G Corp. v. Shelor*, 239 Kan. 312, 315, 720 P.2d 1039 (1986); K.S.A. 77-621.

In addition, "[o]n review, the district court may find the agency action is invalid if the agency erroneously interpreted or applied the law." *537721 Ontario, Inc. v. Mays*, 14 Kan. App. 2d 1, 2, 780 P.2d 1126, *rev. denied* 245 Kan. 785 (1989).

Further, we must review this case in light of the statutes which are remedial or designed to protect the public. "Legislation which is remedial in nature is to be liberally construed to effectuate the purpose for which it was enacted. [Citation omitted.] A statute which is designed to protect the public must be construed in light of the legislative intent and is entitled to broad interpretation." *Gonzales v. Callison*, 9 Kan. App. 2d 567, 570, 683 P.2d 454 (1984).

It is well settled that failure to follow statutory mandates constitutes arbitrary and capricious action by an administrative body. In *Citizens to Preserve Overton Park*, the United States Supreme Court stated:

"Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (1964 ed., Supp. V). To make this finding *the court must consider whether the decision was based on a consideration of the relevant factors* and whether there has been a clear error of judgment." 401 U.S. at 416. (Emphasis added).

In *In re Dept. of Energy Stripper Well Exemption*, 520 F. Supp. 1232, 1269 (D. Kan. 1981), *rev'd on other grounds* 690 F.2d 1375 (Temp. Emerg. Ct. App. 1982), *cert. denied* 459 U.S. 1127 (1983), the United States District Court for Kansas concluded "that the 'relevant factor' test is an integral part of the 'arbitrary and capricious' test, and that the record of the administrative decision must affirmatively show consideration of the relevant factors underlying the regulation to sustain that regulation".

In *Benton Franklin Riverfront Trailway v. Lewis*, 701 F.2d 784, 788 (9th Cir. 1983), the court concluded that the failure to consider the possible availability of federal funds for rehabilitation

or preservation rendered the Secretary's action arbitrary. The court's reasoning included:

"The court must ascertain whether the agency took a hard look at all relevant factors and whether the alternatives set forth are sufficient to permit a reasoned choice. We conclude the Secretary acted arbitrarily because he failed to consider all relevant factors.

. . . .

"We find the Secretary of Transportation acted arbitrarily in concluding there were no feasible and prudent alternatives as the determination only discussed funding by the cities or the appellant. There was no mention of the availability, or not, of federal funds for rehabilitation or preservation." 701 F.2d at 788-91.

## DUE PROCESS

Intertwined in this case is the question of procedural due process. Governmental action must affect a protected constitutional interest before procedural protections apply. *Board of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).

Certainly a landowner is entitled to the use of his or her property which does not cause a nuisance. Any restriction on the landowner's use by the government, which results in a disagreement as to that use, would include the landowner and the government entity seeking to restrict or control that use, at any hearing, or in any litigation.

It is not as clear as to which interests of third parties in historic preservation actions ought to receive due process protections. Interested third parties might include adjoining landowners, historic preservation groups, neighborhood associations, or those affected economically by the government or landowner action, wherever located.

Where the legislature has not addressed the issue of due process, as here, it is often left to the courts, as it was to Judge King, to give meaning and substance to the process and define its boundaries and minimum requirements.

## NOTICE

The fundamental due process right of an opportunity to be heard is meaningless unless proper notice allows an interested party to take advantage of that opportunity. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950).

*Mullane* requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314.

The notice must "reasonably . . . convey the required information [citation omitted], and it must afford a reasonable time for those interested to make their appearance [citation omitted]." 339 U.S. at 314.

*Mullane* involved the settlement by a court of trust accounts. However, the same principles have been applied to cases involving land use. *Walker v. Hutchinson City*, 352 U.S. 112, 115, 1 L. Ed. 2d 178, 77 S. Ct. 200 (1956).

Although notice of legislative action is usually not required, see *Krimendahl v. Common Council*, 256 Ind. 191, 198, 267 N.E.2d 547 (1971), when a legislative body sits as an adjudicative body, we agree with Judge King that some written notice ought to be given to those entitled to notice, following the principles in *Mullane*.

The trial court concluded that K.S.A. 75-2724 and the "local agreement" between the City and KSHS required the City to give special notice of the hearing to LPA and KSHS. On appeal, KSHS and LPA do not argue that the City failed to comply with the notice provisions of K.S.A. 75-2724(a). When examined in isolation, Allen and the City are correct that there was no technical or statutory requirement that KSHS and LPA receive special notice. However, taking the position of Allen and the City ignores the essence of the trial court's determination and a plain reading of the statute. When the failure to give notice is combined with the failure to grant the opponents adequate time and access to explore potential alternatives, added to the lack of opportunity to study the evaluations, the trial court concluded, and we agree, that no "relevant factors" or "feasible and prudent alternative" to the request for a demolition permit could possibly have been presented to the City Commission.

The statutory mandates and the rules announced in *Allen I*, combined with the prohibition against arbitrary and capricious decision-making, support the trial court's conclusion that the City acted arbitrarily by failing to inform LPA and KSHS of the hearing date or failing to continue the hearing for a full airing of relevant

factors and feasible and prudent alternatives. Here, LPA learned of the hearing date less than a week before the hearing. In addition, the City and Allen have not challenged the position of KSHS that it first learned of the hearing the day *after* the hearing was conducted.

Given the unique circumstances here in that both KSHS and LPA had participated in the appeal of *Allen I*, the City's failure to inform them of the new hearing date rendered the City's action arbitrary and capricious. We agree with the conclusion of the trial court that, under the facts presented and the unique situation involved herein, coupled with our reading of the cases and the statutes, the City's action can only be classified as arbitrary, unreasonable, and capricious.

## HEARING/INSPECTION

The United States Supreme Court, in *Board of Regents v. Roth*, 408 U.S. at 570 n.7, stated that "some kind of a hearing" is required prior to the deprivation of a protected interest. Given the statutory mandate that the SHPO had an interest, and perhaps LPA did also, then the type and timing of the hearing are important considerations.

The City argues that it could not order Allen to allow access to the Building as directed by the district court's ruling. The City cites *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), which the City says states that only a search warrant, emergency, or consent can authorize an administrative search. The City's reliance on *Camara* is misplaced. The City never raised this issue before the trial court and, therefore, it cannot be raised for the first time on appeal. Even if *Camara* is considered, the rule stated there is not absolute or applicable in all circumstances. It is well settled that, in civil proceedings, a trial court may order a party "to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing or sampling the property." K.S.A. 1990 Supp. 60-234(a)(2), (b).

It is inherent that, in a process which requires an examination of "all relevant factors" before a conclusion be made that there is "no feasible and prudent alternative," such access be granted.

The issue is not whether the reports of the architects and engineers supplied by Allen are accurate, weighty, and persuasive. The issue is whether there are other relevant factors, such as federal funding or any other matters which might be available, which would allow the City to conclude that an alternative is prudent or would otherwise affect the final decision by the City.

The legislature has determined that historical preservation "should be among the highest priorities of government." K.S.A. 75-2715. Given this public policy, we conclude, as did the trial court, that it is incumbent upon the City to provide a full and fair hearing to all interested parties, with adequate notice and the opportunity to develop and present relevant information.

## LPA'S STANDING

We agree with Allen that the question of LPA's standing to challenge the City's action is moot. The Kansas Supreme Court recently stated:

" 'A "moot case" has been variously defined. One common definition is that it is a case in which determination of an abstract question is sought when in reality there is no actual controversy existing. Another common definition is that it is one which seeks a judgment upon some matter which if rendered could not have any practical effect upon any then-existing controversy.' [quoting *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 (1945)] . . . .

. . . .
" 'We have frequently said that it is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court.' [quoting *Thompson v. Kansas City Power & Light Co.*, 208 Kan. 869, 871, 494 P.2d 1092, *cert. denied* 409 U.S. 944 (1972).]" *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 289-91, 807 P.2d 664 (1991).

KSHS has raised the same issues as LPA. The district court's decision granted all of the relief requested by LPA and this court's appellate decision will determine the validity of the claims raised by both KSHS and LPA. The issue of LPA's standing is moot.

## CONCLUSION

We, therefore, conclude that the trial court decision must be affirmed. We agree that the City's action was arbitrary and capricious given the facts here. The City's failure to notify KSHS and LPA, coupled with the refusal to grant a continuance, pre-

vented KSHS and LPA from participating in a meaningful way and deprived them of the opportunity to gather information and study Allen's evaluations, and, therefore, prevented the City from considering all "relevant factors" as required by K.S.A. 75-2724(a).

The decision of the trial court is affirmed. This matter is remanded to the District Court of Douglas County so that it may order an inspection of the premises by the SHPO or someone acting in his behalf, and/or in conjunction with LPA, if said inspection has not taken place. The court shall then direct the City to schedule a hearing within a reasonable time, with notice by publication and by mail to the SHPO and LPA.

LEWIS, J., dissenting: I must dissent from the majority opinion filed in this action.

On April 20, 1990, this court filed its opinion in *Allen Realty, Inc. v. City of Lawrence*, 14 Kan. App. 2d 361, 790 P.2d 948 (1990). That decision remanded the matter to the trial court with directions to remand to the City Commission for a new hearing on the application for a demolition permit. The trial court complied with the directions of the remand and so did the City. The City conducted a second hearing on the demolition permit and, at the conclusion of that hearing, made a decision that the permit should be issued.

Approximately one and one-half years later, we again find fault with the City's conduct in making a decision on a purely local matter. The second hearing held by the City Commission did not satisfy the majority of this court, and we are again remanding for the City to conduct a third hearing on the subject. The third time under these circumstances is definitely not the charm.

Allen Realty purchased this property in 1976. The structure in question is *not* on the register of historic places; it is just *close to one that is*. In this context, it is certainly too close for comfort.

In my judgment, we are preventing Allen Realty from dealing with a piece of property which it owns and with which it wishes to deal in a lawful manner. Allen Realty desires to destroy the structure in question. It undoubtedly has that right under the laws and constitutions of the United States and the State of Kansas. It is difficult to understand why a property owner is not permitted, after all this time and two hearings on the subject,

to destroy a dangerous, deteriorating, and unsafe structure. In the interest of historic preservation, we appear to be perpetuating the existence of a structure inspected by the Lawrence Fire Department in 1988 and found to be unsafe. We continue to do so despite the fact that the Lawrence City Commission has made a sincere effort on two occasions to conduct a hearing on whether Allen Realty should be issued a demolition permit.

The majority opinion concludes that the City's action in granting the permit was arbitrary and capricious. One of the key factors in that determination was the City's failure to give "special notice" to KSHS and LPA of the City Commission meeting at which the demolition permit was to be discussed.

We fault the City for not giving a notice that *it was not required by statute to give*. Indeed, the majority opinion concedes: "On appeal, KSHS and LPA do not argue that the City failed to comply with the notice provisions of K.S.A. 75-2724(a)." In other words, the majority has invented a notice requirement which did not exist and holds that the City's failure to comply with our recently invented requirement renders its decision arbitrary and capricious. I consider this to be illogical.

We deal here with an interference in the right of a private owner to make use of his property. This interference is permitted by virtue of legislation enacted by the Kansas Legislature. Without the existence of the Kansas Historical Preservation Act, K.S.A. 75-2715 *et seq.*, the interference with Allen Realty's decision to demolish its own property would not be permitted. Accordingly, it is my opinion that such interference should be limited strictly by the provisions of the Kansas Historical Preservation Act.

K.S.A. 75-2724 states that notice to KSHS must be given at two specific times: (1) upon receipt by the City of its application for the permit; and (2) if a determination is made by the City Commission that no feasible and prudent alternative exists, then by certified mail after the hearing at which the determination was made, but at least five days prior to issuance of the permit. These are the only notices required by statute; to create any other notice is not acceptable.

The first notice required by the statute was given in May 1988. The statute does not require any additional notice prior to the hearing that is required by statute.

The only other notice required must be given after the hearing. That notice was also given. The record clearly shows that all notices required by the Kansas Historical Preservation Act were given. It is unacceptable for this court to require, by judicial fiat, additional notice and to hold that proceeding without such notice is to act arbitrarily and capriciously. This is a matter created by statute, and the procedure to be followed is specifically set forth by statute in the Kansas Historical Preservation Act. There is no logical or legal basis for this court to create additional procedural requirements not set forth by statute.

The record further shows that at least LPA had actual notice of the hearing conducted by the City Commission. It had sufficient notice to prepare a letter and mail it in a timely fashion, requesting that the City Commission grant it a continuance. The request for a continuance was denied, but the fact is that LPA was present at the public hearing held on the application for a demolition permit. LPA was present at the hearing, and, yet, it offered not one piece of evidence to indicate that the City should not grant the demolition permit. In fact, LPA offered nothing pro or con to assist the City Commission in making this difficult decision. It is ludicrous to say that the lack of notice prevented LPA from providing evidence at the City Commission meeting. Let us not forget that this organization has been fighting Allen Realty's desire to demolish the building in question since 1988. Over that period of time, surely LPA has gathered some relevant and material evidence which would have a bearing on whether the demolition permit should be issued. If it had, it did not offer that evidence to the City Commission. It is my judgment that, having acted in that manner, LPA is in no position to insist that Allen Realty be further frustrated in dealing with its property and that a third City Commission meeting be had on the subject. It does not seem to me to be logical that, under the facts shown, this organization should be permitted to frustrate the legitimate aims of a property owner in the State of Kansas.

The majority opinion speaks eloquently of due process and of the opinion of the majority of this panel that the fundamental

due process rights were denied to the opponents of Allen Realty. I strongly disagree.

As pointed out earlier, LPA had actual notice of the hearing and was in a position to offer evidence at the hearing; it simply failed to do so. In my opinion, the record does not support a conclusion that LPA was denied any due process rights which it may have.

We are not dealing here with a constitutional right to interfere in a property owner's decision concerning how he would deal with his property. We are, rather, dealing with a statutory right, which has been granted KSHS, and that statutory right permits KSHS to be given notice and to play a role in the decision of the property owner to demolish the property. The requirements of the statute have been complied with; KSHS has had all of the notice required by statute, as has LPA. It does not appear to me that KSHS or LPA should have any greater due process rights in this matter than granted to those organizations by statute. The rights to notice and an opportunity to be heard, which are granted by statute, were complied with. To hold that KSHS and LPA have any greater rights to notice and an opportunity to be heard than are granted by the Kansas Historical Preservation Act is neither sound nor justified under the circumstances.

I would affirm the decision of the City Commission and reverse the decision of the trial court. I would hold that all of the requirements set forth by the Kansas Historical Preservation Act relating to notice and opportunity to be heard were fully complied with. The decision of the City Commission to grant the permit is sound and based on substantial evidence. There is no basis for a conclusion that the City acted arbitrarily and capriciously. Its decision to issue the demolition permit should be affirmed. Continued judicial interference with the property rights of Allen Realty is unwarranted. The decision of the majority rewards LPA for not participating in the hearing that was held and guarantees another two years of protracted litigation. The demolition permit should be issued and this matter brought to an end.